# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ALABAMA
# NORTHWESTERN DIVISION

| | |
|---|---|
| **CHESTER P. KING,** ) | |
| ) | |
| **Plaintiff** ) | |
| ) | |
| v. ) | **CIVIL ACTION NO. 3:11-01697-KOB** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of the Social** ) | |
| **Security Administration,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

## I. INTRODUCTION

On January 17, 2008, the claimant, Chester King, applied for disability insurance benefits under Title II and supplemental security income under Title XVI of the Social Security Act. (R. 22). The claimant alleges disability commencing on January 1, 2008 because of asthma/chronic obstructive pulmonary disease (COPD), degenerative disease of the lumbar spine, sleep apnea, and obesity. (R.19, 21). The Commissioner denied the claim both initially and on reconsideration. The claimant filed a timely request for a hearing before an Administrative Law Judge, and the ALJ held a hearing on August 18, 2009. (R. 19). In a decision dated September 17, 2009, the ALJ found that the claimant was not disabled as defined by the Social Security Act, and thus, was ineligible for supplemental security income. (R. 28). On March 23, 2011, the Appeals Council denied the claimant's request for review; consequently, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration. (R. 6). The

claimant has exhausted her administrative remedies, and this court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons stated below, this court affirms the decision of the Commissioner.

## II. ISSUES PRESENTED

A. Whether the ALJ properly applied the pain standard in finding that the claimant's subjective statements concerning intensity, persistence and limiting effects of symptoms were not supported by objective medical evidence.

B. Whether the ALJ committed reversible error by not basing his decision on substantial evidence when he discredited the opinion of a treating physician while assessing the claimant's disability.

## III. STANDARD OF REVIEW

The standard for reviewing the Commissioner's decision is limited. This court must affirm the Commissioner's decision if the Commissioner applied the correct legal standards and if the factual conclusions are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

"No . . . presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999. This court does not review the Commissioner's factual determinations *de novo*. The court will affirm those factual determinations that are supported by substantial evidence. "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

The court must "scrutinize the record in its entirety to determine the reasonableness of the

[Commissioner's] factual findings." *Walker*, 826 F.2d at 999.  A reviewing court must not look only to those parts of the record that support the decision of the ALJ, but must view the record in its entirety and take account of the evidence that detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

## IV.  LEGAL STANDARD

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person cannot "engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432 (d)(1)(A) (2004).  To make this determination, the Commissioner employs a five-step, sequential evaluation process:

> (1) Is the person presently unemployed;
> (2) Is the person's impairment severe;
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. pt. 404, subpt. P, app.1;
> (4) Is the person unable to perform his or her former occupation;
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding a disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); *see* 20 C.F.R. §§ 404.1520, 416.920.

A three-part pain standard "applies when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *see also Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999).  "The pain standard requires (1) evidence of an underlying medical condition *and either* (2) objective

medical evidence that confirms the severity of the alleged pain arising from that condition *or* (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt*, 921 F.2d at 1223 (emphasis added).

In evaluating physician's opinions, "the [ALJ] may reject any medical opinion," including that of a treating or consulting physician, "if the evidence supports such a contrary finding." *Syrock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985). If the evidence supports such a contrary finding, the ALJ must articulate specific reasons for rejecting the treating or consulting physician's opinion. *See Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005). Furthermore, the ALJ is only required to develop the medical history for the twelve months prior to the date the application for supplemental social security income is filed but has no duty to develop the record after the date the application is filed. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

## V. FACTS

The claimant completed the ninth grade and was forty years old at the time of the administrative hearing. (R. 24, 390). Her past work experience includes employment as a tile sorter, chicken deboner, cashier, and nurse's aide at a nursing home. (R. 25, 399-400). The claimant alleges she is unable to work because of asthma/chronic obstructive pulmonary disease (COPD), degenerative disc disease of the lumbar spine, sleep apnea, and obesity. (R. 21). Her previous medical history is notable for a history of polysubstance abuse including a long-time use of crack cocaine, marijuana, and cigarettes; however, as of her hearing on August 18, 2009, she was not using any of these substances. (R. 404).

*Physical Limitations*

The claimant originally alleged disability on August 2, 2001. At this time, she worked in a chicken house. She suffered from slipped discs and arthritis in her back and asthma that was made worse by the cold in the chicken house. Since that time, she has made no work attempts. (R. 397).

She previously filed an application for disability on February 26, 2003, and on July 12, 2007, the Commissioner awarded the claimant a closed period of disability from July 25, 2003 to April 24, 2006. (R. 386). At this time, an ALJ found that the claimant had arthritis of the lumbosacral spine, multiple arthralgias, major depressive disorder, and a history of polysubstance abuse that caused significant limitations in her ability to perform basic work activities. Yet, after starting several medications on June 21, 2006, the claimant showed significant improvement and reported "good sleep, energy, appetite, and concentration." Thus, the court awarded her a closed, not open, period of disability. The claimant did not appeal this decision, indicating that she agreed that improvement had occurred at the end of this period. (R. 37-42).

On December 26, 2007, the claimant first visited Dr. Frank Gillis, a general practitioner acting as a treating physician at Medical Mall. She complained of chest pain that had been present for a week; dizziness that had been present for a week; and moderate back pain that had been present for several years. He diagnosed her with lumbago, insomnia, and obesity and ordered an MRI for her back and a cardiolyte stress test.  (R. 165-67). The radiologist found moderate disk herniation with neural impingement in her lower back. (R. 178).

On January 17, 2008, the claimant visited Dr. Gillis for a follow-up visit, complaining of sleep disturbance and moderate back pain. Furthermore, she complained of a new mood

5

disturbance that had been present for several months. She described a feeling of anxiety and depression, stating that she "fel[t] nervous all the time" and she "pull[ed] her hair out at times." He diagnosed her with lumbago, insomnia, sleep apnea, and fibromyalgia. (R.160-62). She also visited him again on February 20, 2008 for back pain. She reported that she had unsuccessfully tried to treat her pain with prescription medications, but had not attended the physical therapy Dr. Gillis had scheduled for her after her last doctor's visit. (R. 155).

On February 22, 2008, the claimant visited Dr. Edsel Holden, a specialist acting as a consulting physician, at The Lung Center, PC. At this time, the claimant was not sleeping well at night and was "awaken[ing] every hour." She was regularly falling asleep while performing everyday activities like talking on the phone, driving, or visiting with friends. The doctor diagnosed her with sleep apnea, COPD, and persistent smoking. (R. 132-34).

After a fall at Food Land, the claimant visited the Shoals Pain Center for a spinal block treatment for pain in her lower back and legs on February 27, 2008. During a follow-up visit on April 21, 2008, the claimant reported that although the treatment had initially worked, the pain had returned two to three weeks prior to this visit. (R. 140-42).

On April 23, 2008, the claimant visited Dr. Gillis complaining of moderate abdominal pain that had been present for about two weeks at the time of the visit. On May 5, 2008, the claimant took a drug test and tested positive for marijuana. (R. 146, 153).

On May 6, 2008, Dr. Carol R. Porch, a DDS physician, examined the claimant for a Physical Residual Functional Capacity Assessment. She found that the claimant could occasionally lift twenty pounds, frequently lift ten pounds, stand for a total of at least two hours in an eight-hour workday, and sit (with normal breaks) for a total of about six hours in an eight-

hour workday. (R. 186-87). She also noted that the claimant should avoid concentrated exposure to extreme cold, wetness, humidity, and fumes, and avoid all exposure to hazards like machinery. She found that, while the claimant's allegations of arthritis and asthma were credible, she anticipated that the claimant would be able to function at the level of the RFC if she were compliant with medical recommendations. (R. 190-91).

On May 14, 2008, Dr. Bonnie Atkinson, a psychologist, saw the claimant for a Comprehensive Psychological Evaluation as requested by the Disability Determination Office of the Social Security Administration. (R. 179). Dr. Atkinson found the claimant to have "an employable appearance," a normal activity level, and normal hand-eye coordination. The claimant could maintain focus sufficient to respond to interview questions, but had slow thought and concentration levels. Dr. Atkinson found her to be functioning in the below average range of intelligence based on clinical observations and information provided by other sources. Dr. Atkinson noted that, while her mood was normal, the claimant did have a sleep disturbance and a loss of pleasure in daily activities. Dr. Atkinson attributed the claimant's weight gain to steroid shots for back pain. Despite these noted ailments, Dr. Atkinson stated that "that claimant appeared eager to affirm all problems and was not entirely convincing" and diagnosed her with malingering. Dr. Atkinson concluded that the claimant was "mentally ill but not mentally retarded," and her condition was unlikely to "significantly change in the coming [twelve] months unless there [was] an improvement in her underlying physical condition." (R. 182-84). Ultimately, Dr. Atkinson found that the claimant did not give "reliable and adequate information for the evaluation" and seemed to be malingering. However, Dr. Atkinson stated that the information was still sufficient to make a determination about the claimant's disability status. (R.

206).

On May 22, 2008, the claimant returned to Dr. Gillis, complaining of back pain and wanting a larger dosage of pain medication. (R. 229). He referred her to another doctor for an examination of her back injury. On June 9, 2008, the claimant visited Dr. Gregory Adderholt, a specialist acting as a consulting physician, who found that her lower back pain was due to degenerative disc disease and an asymptomatic thoracic disc herniation. Because of her morbid obesity, however, he did not recommend any further neurosurgical intervention. (R. 305-06). The claimant returned to Dr. Gillis on July 17, 2008, complaining that the condition had worsened since her last visit. (R. 216).

Helen Keller Hospital's emergency room admitted the claimant on January 1, 2009 for a cough and chest pain and again on February 2, 2009 for shortness of breath. The claimant's shortness of breath had worsened to where she was short of breath even at rest. (R. 338, 352). The doctor encouraged her to quit smoking upon her discharge from the hospital and offered her programs to quit smoking. (R. 343). On February 11, 2009, the claimant visited the Lung Center, PC for a follow-up to her previous treatment after being admitted to the hospital for two days after she experienced shortness of breath. (R. 253).

On April 24, 2009, doctors at Helen Keller Hospital admitted the claimant after an asthma attack. On May 5, 2009, she went first to the emergency room for an "asthma attack." After being turned away at the emergency room, she sought treatment at the Lung Center, PC, where they diagnosed her as acutely ill and admitted her to Shoals Hospital. At the time of her admittance, she still was smoking and complaining of cough, wheezing, dyspnea, and COPD exacerbation that had not improved despite outpatient treatment. (R. 248, 279).

On May 27, 2009, the claimant visited Dr. Holden at the Lung Center, PC after her admittance to the hospital with a COPD exacerbation several weeks before. (R. 246). She continued to smoke at this time and was wearing her CPAP[1] once or twice each week. On August 14, 2009, when the claimant returned to Dr. Holden at the Lung Center, PC, she had quit smoking cigarettes two to three months prior. The doctor told her to use a CPAP, quit smoking marijuana, and return to the clinic in four months. (R. 243-44).

The emergency room at Helen Keller Hospital admitted the claimant on June 25, 2009 and August 5, 2009 for breathing problems. (R. 314, 308).

In an updated Medical Source Opinion from August 11, 2009, Dr. J.A. Tomlinson, a consulting physician, found that the claimant's health had deteriorated such that in her present state, she could only "frequently" lift no more than a five-pound weight and could never perform any functions with her left arm. Dr. Tomlinson's opinion indicated that in her present health, the claimant could never perform functions like balancing or kneeling; could not work in any extreme environments; and lacked the ability to work on a regular and continuous basis. Furthermore, he wrote that the claimant could only stand for one to two hours for each eight-hour workday; walk for one to two hours for each eight-hour workday; and sit for three hours for each eight-hour workday. Dr. Tomlinson noted that claimant's limitations severely compromised her ability to work. Further, he stated that the claimant's medical condition could reasonably be expected to produce the pain of which she complained. (R. 367-70). Because the form on which

---

[1] A CPAP is a machine that delivers air pressure through a mask placed over the nose while a person sleeps. *Sleep Apnea: Treatment and Drugs*, THE MAYO CLINIC (last visited May 22, 2012) http://www.mayoclinic.com/health/sleep-apnea/DS00148/DSECTION=treatments-and-drugs.

the opinion was written included a notation requesting that the doctor return it to the claimant's attorney, the court presumes that the claimant was referred to Dr. Tomlinson by his attorney.

*The ALJ Hearing*

After the Commissioner denied the claimant's request for supplemental security income and disability insurance benefits, the claimant requested and received a hearing before an ALJ on August 18, 2009. At the hearing, the claimant argued that although she did not meet a listing, her residual functional capacity was below sedentary. (R. 386, 389).

The claimant dropped out of school in the middle of the tenth grade, has no vocational training, and cannot read or write well. Based on her work history, Ms. Azzam, a vocational expert, testified that the claimant's past work experience would be considered light and unskilled work. (R. 396, 401).

The claimant testified at the hearing that her main health problem is her breathing. The claimant stated that she recently (from the time of the hearing on August 18, 2009) saw a doctor that told her she might have to sleep on oxygen at nights because of her sleep apnea. While she quit smoking cigarettes on March 6, 2008, she testified that she continued to smoke marijuana until approximately five to six months before the hearing took place because her doctor told her it was bad for her lungs. (R. 402-04). She stated that she has not smoked crack cocaine in more than two years. (R. 417).

The claimant testified that her breathing limits her from participating in many activities. According to the claimant's testimony, her asthma attacks require her to go to the hospital when she is cleaning the house. Further, she claimed that she cannot sleep at night and wakes up every

hour because of her breathing. She stated she has tried to walk to lose weight but has asthma attacks when she tries to exercise. (R. 405).

The claimant testified that she can walk about half a block, stand for about twenty to thirty minutes, and sit for about an hour. She also testified that she can stand for about thirty minutes to an hour at a time. Further, she said that occasionally she could lift about ten pounds but could not do this regularly because of her back injury. (R. 406). She stated she can also lift a gallon of milk with her right hand but cannot lift anything with her left hand. However, she picked up a microphone at the ALJ's request. (R. 409).

The claimant stated she can cook some things, mainly by putting something in a boiling pot; make a bed; and wash clothes. Yet, she testified that she does not have the stamina to sweep, mop, or fold clothes. The claimant stated she normally does not grocery shop herself but instead sends her children to the store. However, she indicated she goes to the store once a month. (R. 408-10). She testified that she drives roughly twenty miles per week and spends roughly three to four hours each day watching television. The claimant testified that while she would love to work as a tile sorter again, the company she worked for likely would not hire her back. (R. 414-420).

The ALJ presented a hypothetical to the vocational expert, Ms. Azzam, for an individual with the following limitations: could lift five to ten pounds occasionally with each hand; could lift twenty pounds occasionally with both hands; could walk at one time for a block; could stand at one time for an hour; could sit at one time for an hour; and should avoid irritants like fumes and being outside. Ms. Azzam testified that jobs that an individual with the claimant's limitations could perform exist in the national economy in significant numbers, such as a tile sorter, ticket marker, mail sorter, or packager. Ms. Azzam stated that such an employee could

normally miss one day a month of work. (R. 418-420).

When questioning the vocational expert, the claimant's attorney focused on a recent medical report, dated August 13, 2009, by the claimant's physician, Dr. Tomlinson. In the report, the claimant's ability level was far lower than in the prior examination by the DDS. In Dr. Tomlinson's report, the claimant could lift ten pounds occasionally and five pounds frequently; could stand one to two hours; walk one to two hours; and sit for three hours. Based on the limitations in Dr. Tomlinson's opinion, the vocational expert stated that she could not list an example of full-time work that the claimant could perform, as she could only work seven hours in an eight-hour shift. However, if the individual could sit for four hours, Ms. Azzam stated that the individual would be able to perform at the same sedentary level of exertion described in the prior report that would allow her to work as a tile sorter and ticket marker. Ms. Azzam testified that if the individual were required to lie down for three times for one hour each time, this limitation would preclude all employment activity. (R. 421-23).

*The ALJ Decision*

The ALJ found that the claimant had not engaged in substantial gainful activity since January 1, 2008, the alleged onset date as amended. In addition, he found that she had the following severe impairments: asthma/chronic obstructive pulmonary disease (COPD); degenerative disc disease of the lumbar spine; sleep apnea; and obesity (5'4'' tall and 227 pounds). He also established that her impairments did not meet one of the requirements of a listing. (R. 21-23).

The ALJ concluded that the claimant had the RFC to perform light work with the following limitations: can lift five to ten pounds occasionally with each hand; can lift twenty

pounds occasionally with both hands; stand for one hour at a time per workday; walk one block at one time; and sit for thirty minutes to one hour at a time per workday. The ALJ noted that the claimant should avoid bending, stooping, twisting, and lifting weights more than twenty pounds. In addition, the ALJ found that the claimant should avoid respiratory irritants such as smoking, dust, and noxious gases and work in a climate controlled environment. (R.23).

After considering the evidence given by the claimant and her doctors, the ALJ determined that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent they are inconsistent with the RFC assessment. In making this determination, the ALJ gave considerable weight to the testimony of Dr. Atkinson because she had provided evidence in the claimant's previous disability hearing. In addition, the ALJ noted that while the claimant was obese, the record contained no evidence that this impairment had affected her general health or had created any functional limitations for her. Furthermore, he noted that the claimant's reports of her daily activities were "not as limited as expected," suggesting that the her testimony of her pain was inconsistent with her testimony of her daily activities. (R. 24-25).

The ALJ gave considerable weight to the DDS report, which supports a finding of "not disabled." Although these physicians were non-examining, the ALJ found that the opinions of the claimant's treating physicians also supported this finding. Furthermore, he gave little weight to Dr. Tomlinson's opinion of August 2009 because it was inconsistent with the medical evidence of the record and with the claimant's testimony regarding her limitations. Thus, the ALJ found that while the claimant's ability level was limited, she could perform light work. (R. 25).

The ALJ found that the claimant was capable of performing past relevant work as a tile sorter. To support this finding, he gave much weight to the vocational expert's findings that the claimant should be able to perform light jobs such as ticket marker, mail sorter, and packager, and sedentary jobs such as assembler, table worker, and inspector. The ALJ also noted that the claimant's RFC should improve because she had reportedly quit smoking marijuana on a daily basis. (R. 25-27).

Therefore, the ALJ found that the claimant was not disabled and had not been under a period of disability from January 1, 2008 through September 17, 2009. (R. 19, 27-28).

## VI. DISCUSSION

The claimant argues that the ALJ's finding that the claimant's RFC enabled her to perform light work is not supported by substantial evidence. To the contrary, this court finds that the ALJ's decision is properly supported by substantial evidence.

**A. The ALJ correctly applied the three-part pain standard.**

The claimant argues that the ALJ incorrectly applied the three-part pain standard when he determined that she was not unable to work. The three-part pain standard applies when a claimant attempts to establish disability through his own testimony of pain or other subjective symptoms like shortness of breath. *See Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). "The pain standard requires (1) evidence of an underlying medical condition and *either* (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Id.* (emphasis added). A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself

14

sufficient to support a finding of disability. *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995).

In applying the three-part standard, if the ALJ decides to discredit a claimant's subjective testimony of pain, he must discredit it explicitly and articulate his reasons for doing so. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). Failure to articulate the reasons for discrediting the claimant's subjective complaints of pain requires that the testimony be accepted as true. *Id.*

Here, the ALJ conceded that the claimant suffered from an underlying medical condition of asthma/COPD, which is capable of generating her alleged symptoms of shortness of breath; however, he discredited the claimant's subjective testimony regarding the intensity and persistence of her pain that she claimed rendered her unable to work. The ALJ pointed to several inconsistencies in the record to discredit the claimant's testimony. The claimant testified that she could perform no work, yet she testified that she can cook and clean. In addition, at the ALJ hearing, the claimant alleged *both* that she could stand for twenty to thirty minutes at a time *and* for thirty minutes to one hour at a time. Furthermore, the ALJ noted that Dr. Atkinson's finding of malingering suggests that the claimant exaggerated her testimony regarding the severity of her symptoms. The ALJ also discredited the claimant's subjective testimony of symptoms because it was inconsistent with the opinions of Dr. Gillis, Dr. Atkinson, Dr. Adderholt, and Dr. Porch. These physicians' opinions indicate that while the claimant has a medical disorder, she can perform light or sedentary work in contrast to the claimant's testimony that she could do no work. Thus, this court finds that the ALJ articulated specific reasons for discrediting the claimant's subjective testimony of the severity of her pain, and substantial evidence supports his decision.

**B. The ALJ had substantial evidence to discredit Dr. Tomlinson's opinion.**

The claimant contends that the ALJ erred by not giving appropriate weight to the opinion of Dr. Tomlinson. In evaluating physician's opinions, "the [ALJ] may reject any medical opinion," including that of a treating and consulting physician, "if the evidence supports such a contrary finding." *Syrock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985). If the evidence supports such a contrary finding, the ALJ must articulate specific reasons for rejecting the treating or consulting physician's opinion. *See Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005). However, a reviewing court may not re-weigh the evidence, and "credibility determinations are the province of the ALJ." *Id.*

In the instant case, the ALJ articulated specific reasons for rejecting Dr. Tomlinson's opinion. The ALJ noted that Dr. Tomlinson's opinion conflicted with the opinions of three other physicians: Dr. Gillis, Dr. Atkinson, and Dr. Adderholt. Contrary to Dr. Tomlinson's opinion, none of these three physicians' opinions indicated that the claimant was unable to engage in regular and continuous work. For example, Dr. Tomlinson indicated that the claimant could never lift or carry objects with her left arm, although no other physician in the record noted any limitation in function in this arm. In addition, the majority of Dr. Tomlinson's opinion consists of his answers to multiple choice questions posed on a form questionnaire from the claimant's attorney.  Instead of writing his own assessment of the claimant's disability, Dr. Tomlinson's opinion shows only conclusions, not any objective findings or tests like the examinations of the other physicians. Furthermore, Dr. Tomlinson's opinion noted that the claimant can stand for only ten minutes at a time, which contradicts *both* estimates the claimant gave at the ALJ hearing as to how long she could stand at a time (twenty to thirty minutes each time and thirty minutes to

16

an hour each time). Thus, the ALJ correctly found that Dr. Tomlinson's opinion is inconsistent with the opinions of other physicians and the testimony of the claimant herself in its assessment of the severity of the claimant's condition.

Also, the ALJ found that the DDS's assessment performed by Dr. Porch conflicted with Dr. Tomlinson's opinion but was consistent with the opinions of Dr. Gillis, Dr. Atkinson, and Dr. Adderholt. For example, Dr. Porch found that the claimant could occasionally lift twenty pounds, could frequently lift ten pounds, could stand for a total of at least two hours in an eight-hour workday, and could sit (with normal breaks) for a total of about six hours in an eight-hour workday. In contrast, Dr. Tomlinson found the claimant could only "frequently" lift no more than a five-pound weight, could never perform any functions with her left arm, could stand for only one to two hours for each eight-hour workday, and could only walk for one to two hours for each eight-hour workday. Although Dr. Porch was not a treating physician, the ALJ gave her opinion considerable weight because it was consistent with the substantial evidence in the record, contrary to Dr. Tomlinson's opinion.

Furthermore, the ALJ is only required to develop the medical history for the twelve months *prior* to the date the claimant files the application for supplemental social security income, but has no duty to develop the record after the date the application is filed. Thus, the ALJ can choose to include medical evidence from dates after the application was filed but has no duty to do so. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). In the present case, Dr. Tomlinson's assessment took place in August 2009, *over nineteen months after the claimant filed her disability claim*. Therefore, the ALJ had no duty to give any weight to Dr. Tomlinson's opinion. Thus, while the ALJ properly discredited Dr. Tomlinson's testimony and gave it little

weight, he had no duty to consider it.

The court finds that the ALJ articulated specific reasons for discrediting Dr. Tomlinson's opinion and that substantial evidence supports the ALJ's decision.

## VII. CONCLUSION

For the reasons as stated, this court concludes that the decision of the Commissioner is supported by substantial evidence and is to be AFFIRMED. The court will enter a separate order to that effect simultaneously.

DONE and ORDERED this 20th day of September, 2012.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE